

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00053-CV

**IN THE INTEREST OF R.M.M.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2014PA02913
Honorable Peter Sakai, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  July 20, 2016

AFFIRMED

Appellant M.G. appeals the trial court's order terminating her parental rights to her child,

R.M.M.[1]  In her sole issue on appeal, M.G. asserts the evidence was neither legally nor factually

sufficient for the trial court to find, by clear and convincing evidence, that terminating her parental

rights was in R.M.M.'s best interest.  We conclude the evidence is both legally and factually

sufficient, and we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2014, the Texas Department of Family and Protective Services received

a referral alleging physical abuse of M.G.'s newborn son, R.M.M.  At the time of R.M.M.'s birth,

---

[1] R.M. Sr., who is R.M.M.'s father, was a party to the lawsuit but is not appealing the termination of his parental rights.

both M.G. and R.M.M. tested positive for opiates. M.G. admitted using heroin throughout her pregnancy, with her last use occurring after the Thanksgiving holiday.

On December 12, 2014, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. On December 22, 2014, the trial court issued temporary orders appointing the Department as temporary managing conservator of R.M.M., and M.G. as temporary possessory conservator, with limited rights specifically set forth in an attachment to the orders.

On January 11, 2016, after several permanency hearings and a bench trial on the merits, the trial court terminated M.G.'s parental rights to R.M.M. based on (1) subparagraphs (E), (N), (O), (P), and (R) of section 161.001(b)(1), *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N)–(P), (R) (West Supp. 2015), and (2) a determination that such termination was in the child's best interest, *see id.* § 161.001(b)(2).[2]

---

[2] Texas Family Code sections 161.001(b)(1)(E), (N), (O), (P), and (R) provide as follows:

    (E)    engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

        . . . .

    (N)    constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:

        (i)    the department has made reasonable efforts to return the child to the parent;

        (ii)    the parent has not regularly visited or maintained significant contact with the child; and

        (iii)    the parent has demonstrated an inability to provide the child with a safe environment;

    (O)    failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

    (P)    used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

        (i)    failed to complete a court-ordered substance abuse treatment program; or

        (ii)    after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance;

        . . . .

    (R)    been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription; . . . .

TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N)–(P), (R).

M.G. does not challenge the trial court's findings concerning the statutory grounds for involuntary termination of her parental rights. *See id.* § 161.001(b)(1); *see also In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). Instead, she argues the trial court erred because the evidence was neither legally nor factually sufficient for it to find, by clear and convincing evidence, that terminating her parental rights was in R.M.M.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *accord J.F.C.*, 96 S.W.3d at 261.

## SUFFICIENCY OF THE EVIDENCE

### A.     Standard of Review

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id.* (quoting *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.)).

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001; *J.F.C.*, 96 S.W.3d at 261. "There is a strong presumption that the best interest of the child is served by keeping the child with its natural parent, and the burden is on [the Department] to rebut that presumption." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The same evidence of acts or omissions used to establish grounds for termination under section 161.001(b)(1) may be probative in determining the best interest of the child." *Id.*

Under a clear and convincing evidence standard, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true," the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord C.H.*, 89 S.W.3d at 25.

Because M.G. does not challenge the trial court's finding that she committed one or more of the statutory grounds of involuntary termination, we need only address the trial court's finding that termination was in the child's best interest.

## B.     Best Interest of the Child

Before a trial court may terminate a parent's rights to a child, the court must make a determination that such "termination is in the best interest of the child." TEX. FAM. CODE ANN. § 161.001(b)(2); *accord J.F.C.*, 96 S.W.3d at 261. Applying the applicable standards of review for sufficiency of the evidence, we examine all the evidence, *see J.F.C.*, 96 S.W.3d at 266; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (crediting or disregarding evidence), and recite below the evidence that especially pertains to the *Holley* factors, *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

In the case at bar, the trial court heard live testimony from three witnesses, admitted into evidence the Family Service Plan prepared for M.G., and heard arguments from the Department's attorney, the child's attorney ad litem, and counsel for M.G.[3]

*1.     Mario Avelar*

Mario Avelar, an investigator with Texas Department of Family and Protective Services, testified that following R.M.M.'s birth on December 6, 2014, the hospital reported both R.M.M. and M.G. tested positive for opiates. R.M.M. was in the hospital's Neonatal Intensive Care Unit where staff reported R.M.M. was experiencing slight tremors and was being treated with withdrawal medication. During his investigation, Avelar also met with M.G. She reported using both methadone and heroin during her pregnancy.

Avelar testified that he was unable to identify any relatives with whom R.M.M. could be temporarily placed.

*2.     Susan[4]*

Susan, R.M.M.'s foster mom, took R.M.M. home from the hospital at seven days old. Although Susan had previously fostered five other children, R.M.M. was the first newborn placed in her care.

Susan testified R.M.M. was barely five pounds at birth and suffered several complications as a result of his exposure to drugs. Specifically, R.M.M. appeared rigid, suffered from hyperflexion, and experienced trouble sleeping and eating. Susan and her husband "either slept holding him, or . . . he slept in his crib for a couple of hours and then woke up." At two months

---

[3] The record shows that M.G. was not present at the trial. M.G.'s attorney announced not ready for trial because he had no means of contacting M.G. after she was released from jail in December of 2015. The trial court overruled his request for a continuance. The motion for continuance is not at issue in this appeal.
[4] We refer to R.M.M.'s foster mother by an alias. *See* TEX. R. APP. P. 9.8(a), (b)(2).

old, R.M.M.'s continuous eating issues required pyloric stenosis surgery to prevent continuous vomiting. R.M.M. also required therapy due to his ongoing muscle tone issues.

Susan testified that although R.M.M. appeared to be healthy, normal, and developmentally on target, he does not walk, has little muscle tone, still becomes rigid, and continues to struggle with hyperflexion. She explained R.M.M. continues to exhibit "terrible" sleep patterns. For example, only when Susan holds him will R.M.M. nap for more than an hour; and, R.M.M. still wakes two or three times each night. Notwithstanding these shortcomings, R.M.M. is mischievous, loves to play with trucks, and follows their four-year-old foster child around the house.

During the thirteen months R.M.M. has been in her care, M.G. visited R.M.M. only twice, including one visit a week after he left the hospital. Susan testified R.M.M. has bonded with her and her husband and they hope to adopt R.M.M.

*3.     Kimberly Robinson*

Kimberly Robinson has been the Department's legal caseworker in R.M.M.'s case since March of 2015. Robinson testified that R.M.M. was M.G.'s fifth child and her parental rights to three of the children were terminated. The fourth child was living with his paternal family.

Because M.G. was incarcerated in a Texas Department of Corrections drug rehabilitation center in Henderson, Texas when Robinson was assigned the case, Robinson's first contact with M.G. was via telephone on July 16, 2015. M.G. informed Robinson that she was recently released following incarceration for parole violation. Although they agreed to meet on July 20, 2015, M.G. failed to appear for their scheduled meeting. M.G. did not return Robinson's calls.

Robinson further testified that on September 1, 2015, Robinson again spoke to M.G. telephonically. M.G. explained that she missed the July 20, 2015 meeting because her parole was revoked again. During the conversation, M.G. acknowledged using heroin and cocaine throughout

her pregnancy, but M.G. "took responsibility for it," "knew she had a drug problem and she needed help" and "was ready to go to rehab." Based on her pending release, M.G. requested Robinson arrange for visitation with R.M.M. on September 14, 2015.

After M.G. passed a required drug test, she was allowed visitation with R.M.M. During the visit, Robinson questioned M.G. regarding her tardiness for the visitation, her failure to bring specific items for R.M.M. requested of her (diapers, wipes, toys, and snacks), and M.G.'s continued drug use. M.G. admitted she was still addicted to heroin and further acknowledged her previous arrest was also due to heroin use and breaking curfew. On October 2, 2015, Robinson met with M.G. at the Bexar County Jail; M.G. was again incarcerated for using drugs and violating her parole.

Robinson further explained the current hearing was the fourth trial setting. The previous setting, in November of 2015, was reset because M.G. was incarcerated in North Texas. Although Robinson confirmed M.G. was no longer in custody, her numerous attempts to reach M.G. prior to the January 11, 2016 trial setting were unsuccessful.

Robinson testified that termination of M.G.'s parental rights was in R.M.M.'s best interest. M.G. failed to complete the drug rehabilitation program, exhibit an ability to successfully parent R.M.M., demonstrate an understanding of R.M.M.'s needs, secure regular employment, provide a stable home environment, or secure a support system to assist her in R.M.M.'s care. Robinson also explained M.G. failed to complete any services provided for in the service plan created by the Department and filed on February 9, 2015. Additionally, Robinson opined that M.G.'s admitted heroin addiction would place R.M.M. in great physical and emotional danger.

Finally, Robinson testified she attempted to place R.M.M. with family members, including M.G.'s sisters, her father, and an aunt; however, neither sister was qualified. The other family members were reportedly either unwilling to take R.M.M. or felt that he was better in the foster

parents' home. On the other hand, the foster parents have demonstrated an understanding in how to care for and parent R.M.M. and a desire to adopt the child. For these reasons, Robinson opined that termination of M.G.'s parental rights was in R.M.M.'s best interest.

4. *R.M.M.'s Attorney Ad Litem*

The trial court also requested R.M.M.'s attorney ad litem make a recommendation regarding termination of M.G.'s parental rights. The ad litem testified that R.M.M. "is on target, doing great, starting to try and walk, but he is not there just quite yet. But he is flourishing." She recommended M.G.'s parental rights be terminated and that R.M.M. be permanently placed with Susan and her husband.

## C. Application of the *Child's Best Interest*

In a bench trial, the trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witness. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (requiring appellate deference to the fact-finder's findings); *City of Keller*, 168 S.W.3d at 819. The factors used to ascertain the best interest of the child were set forth in *Holley*. 544 S.W.2d at 371–72; *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors). The *Holley* court warned that "[t]his listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley*, 544 S.W.2d at 372; *accord E.N.C.*, 389 S.W.3d at 807 (describing the *Holley* factors as nonexclusive).

Throughout this case, M.G. was unable to successfully address her illegal drug use or provide a nurturing and safe environment for R.M.M. *See In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (concluding trial court permitted to consider parent's past conduct in best interest determination). M.G. also exhibited an inability to attend the necessary drug rehabilitation programs or to seek help elsewhere for her substance abuse. From the time of

R.M.M.'s birth, M.G. continued to violate her parole resulting in incarceration, and then release, only to repeat the same behaviors and face the same consequences.

Based on the evidence presented, the trial court—as the sole judge of the weight and credibility of the evidence—could have reasonably concluded that M.G. lacked the decision-making skills and parental abilities to provide for and parent R.M.M. in a healthy and safe manner. *See H.R.M.*, 209 S.W.3d at 108; *City of Keller*, 168 S.W.3d at 819.

The evidence further supports M.G.'s inability to make positive changes during the pendency of the case. Based on the evidence presented, the trial court could have also reasonably believed that M.G.

- engaged in conduct or knowingly placed R.M.M. with persons who engaged in conduct which endangered R.M.M.'s physical or emotional well-being;
- constructively abandoned R.M.M.;
- failed to comply with the court mandated service plan;
- continued her use of heroin and failed to complete a substance abuse program; and
- was the "cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription."

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N)–(P), (R).

Reviewing the evidence under the two sufficiency standards, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, we conclude the trial court could have formed a firm belief or conviction that terminating M.G.'s parental rights to R.M.M. was in the child's best interest. *See J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108. Therefore, the evidence is legally and factually sufficient to support the trial court's order. *See J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108.

## CONCLUSION

The trial court found statutory grounds supporting termination of M.G.'s parental rights and that termination of M.G.'s parental rights was in R.M.M.'s best interest. Having reviewed the evidence, we conclude it was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of M.G.'s parental rights to R.M.M. was in R.M.M.'s best interest.

Accordingly, we overrule M.G.'s sole issue on appeal and affirm the trial court's order.

Patricia O. Alvarez, Justice